IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IRENE V. BUTLER,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )    Civil Action No. 04-00194-P-B
                                    )
JO ANNE B. BARNHART,                )
Commissioner of                     )
Social Security,                    )
                                    )
        Defendant.                  )

REPORT AND RECOMMENDATION

Plaintiff Irene V. Butler ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381-1383c. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties waived oral argument. Upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner be **AFFIRMED.**

I.    **Procedural History**

On October 8, 2002 Plaintiff protectively filed an application for supplemental security income benefits, alleging that she has been disabled since September 23, 2002[1] due to arthritis,

---

[1]Plaintiff initially alleged that she became disabled on May 5, 2001; however, she later amended this date to September 23, 2002. (Tr. 50, 64).

mechanical low back pain/spinal problems, a nervous condition (anxiety and/or depression), an inability to lift/carry anything heavy and difficulty standing up/moving around. (Tr. 27-28, 49-53, 63-73). Plaintiff's initial application was denied and she filed a Request For Hearing before an Administrative Law Judge ("ALJ"). (Id. at 27-45). ALJ David R. Murchison conducted a hearing on June 26, 2003, which was attended by Plaintiff, her counsel, and Barry Murphy, a vocational expert. (Id. at 192-211). On October 15, 2003, the ALJ entered a decision wherein he found that while Plaintiff suffers from the severe impairments of degenerative joint disease and anemia, she retains the physical residual functional capacity to perform the exertional requirements of medium work, except she is restricted, due to her occasional use of mild psychotropic and pain medications, from working around moving machinery, driving automotive equipment, and working at unprotected heights. (Id. at 22, Findings 3-5). Utilizing the framework provided in Rules 202.17 and 202.18 of App. 1, Subpt. P, Reg. No. 4, the ALJ concluded that the regulations directed a finding of "not disabled" in light of Plaintiff's vocational background and residual functional capacity. (Id. at 23, Finding 9).

Plaintiff sought review of the ALJ's decision before the Appeals Council, who denied same on February 23, 2004, thereby making it the final decision of the Commissioner of Social Security. (Id. at 4-7). 20 C.F.R. §§ 404.981, 416.1481. The

2

parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.  **Background Facts**

Plaintiff was born on March 21, 1963 and was 40 years old at the time of the administrative hearing. (Tr. 50, 196). Plaintiff has a tenth grade education and last worked four (4) hours per day as a janitor in May 2001.[2] (Id. at 196-197, 201). According to Plaintiff, she is unable to work because of pain in her whole body: particularly in her legs and side. (Id. at 197-198). Plaintiff testified that the pain makes it hard for her to walk and hurts so badly that it makes her cry. (Id. at 201, 204). Plaintiff also testified that the pain causes her difficulty walking and prevents her from siting-up or standing for long periods of time.[3] (Id. at 197-198, 201, 204). Plaintiff also indicated that it helps to elevate her legs; however, no doctor has ever instructed her to do so. (Id. at 198, 202). Plaintiff further testified that she suffers from rheumatoid arthritis and another type of arthritis; however, she has never been hospitalized for these ailments, and her present treatment consists of prescription pain medication which causes side effects such as sleepiness, an inability to

---

[2]Plaintiff testified that her janitorial job ended in May 2001 due to the expiration of her employment contract. (Id. at 196-197).

[3]Plaintiff testified that Dr. Bell removed a polyp in response to her complaints of pain in her side, and that aside from that, the only other thing Dr. Bell did in response to her complaints was to instruct her to take a laxative. (Id. at 200-201).

communicate, and an overall feeling of being "out of it."  (Tr. 197-199).  Plaintiff reported that due to the side effects of her pain medication (<u>i.e.</u>, sleepiness), she typically naps about three times per day, for a few hours at a time.  (<u>Id</u>. at 204-205). Plaintiff testified that she reported these side effects to her doctor, and was told that there was nothing that could be done about it because her condition is "just going to get worse." (<u>Id</u>. at 199).

Plaintiff testified that three of her four adult children, and two of her grandchildren, live with her.  (<u>Id</u>. at 200).  According to Plaintiff, her children take care of her and do all of the cooking and cleaning.  (<u>Id</u>. at 200, 204-205).  Plaintiff further testified that she is unable to assist with the care of her grandchildren.  (<u>Id</u>.)

## III. <u>Issue On Appeal</u>

Whether the ALJ erred by failing to assign the proper weight to the opinions of Plaintiff's treating physician?

## IV. <u>Analysis</u>

### A.   <u>Standard of Review</u>

In reviewing claims brought under the Act, this court's role is a limited one.  The court's review is limited to determining: 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[4]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In  determining  whether  substantial  evidence exists, the court must view the record as a whole, taking into account  evidence  favorable  as  well  as  unfavorable  to  the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

**B.   Discussion**

An  individual  who  applies  for  Social  Security  disability benefits  or  supplemental  security  income  must  prove  their disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[4]This court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his or her disability. 20 C.F.R. §§ 404.1520, 416.920.[5]

In the case sub judice, the ALJ applied the usual five-step process for evaluating disability claims, and found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability, and that she has the impairments of degenerative joint disease and anemia, which are "severe" within

---

[5]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing to Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

the meaning of the Act.  (Tr. 22-23, Findings 2-3).  The ALJ found further, that Plaintiff's alleged nervous condition (_i.e._, anxiety and/or depression) is not a severe impairment because the evidence does not show a 12 month continuous period during which this condition had more than a minimal effect on her ability to function, she received only conservative treatment from her primary physician for this impairment, and at most, the treatment included only a mild psychotropic medication regimen.  (_Id_. at 22, Finding 3).  The ALJ also concluded that Plaintiff's impairments, singly or in combination, do not meet or equal the listings, and that while she has no past relevant work, she retains the physical residual functional capacity to perform the exertional requirements of medium work, except she is restricted, due to her occasional use of mild psychotropic and pain medications, from working around moving machinery, driving automotive equipment, and working at unprotected heights.  (_Id_. at 22-23, Findings 3-5, 8).  The ALJ also concluded that Plaintiff's subjective complaints and alleged functional limitations lack credibility, as they are not supported by objective evidence to degree alleged.  (_Id_. at 22, Finding 6).

Plaintiff contends that the ALJ erred by failing to accord proper weight to the opinions of her treating physician, Cecil L. Parker, M.D. ("Dr. Parker").  (Doc. 10).  Specifically, Plaintiff contends that the ALJ erred by finding that she does not possess a severe mental impairment when the evidence from Dr. Parker and

others reflect that she does possess a severe mental impairment. (Id.)  Plaintiff further asserts that the ALJ erred in discounting Dr. Parker's opinion that Plaintiff cannot work due to degenerative joint disease of the spine.  (Id.)

The undersigned finds that the ALJ did not err in the weight afforded the opinions and findings of Dr. Parker, and that substantial evidence supports the ALJ's determination.  Generally, the opinion of a treating physician must be given substantial weight, or credit, unless "good cause" is shown to the contrary. See, e.g., Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159-1160 (11th Cir. 2004) (per curiam); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (per curiam).  However, an ALJ may properly discount the opinion of a treating physician if the opinion is conclusory, inconsistent with their own medical records, or if the evidence supports a contrary finding.  See, e.g., Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991) (citing to Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)); Lewis, 125 F.3d at 1440.  See also Crawford, 363 F.3d at 1159-1160 (finding that the physician's opinion that claimant was permanently and totally disabled was inconsistent with his own treatment notes, unsupported by medical evidence, and based primarily on the claimant's subjective complaints of pain); 20 C.F.R. § 404.1527(c)(2)(providing that if medical evidence is internally

inconsistent, the Commissioner may weigh all the evidence and make a decision if he can do so on the available evidence); 20 C.F.R. § 404.1527(d)(4) (stating that generally, the more consistent an opinion with the record as a whole, the greater weight it will be given).  If the ALJ discounts the opinion of a treating physician, he must clearly articulate his reasons for doing so.  See, e.g., Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992) (per curiam) (concurring opinion) (citing to Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)).  Also, the ALJ's reasons must be legally correct and supported by substantial evidence in the record.  See, e.g., Lamb v. Bowen, 847 F.2d 698, 701-702 (11th Cir. 1988); Hale, 831 F.2d at 1012.

As noted supra, the ALJ concluded that Plaintiff's alleged anxiety/nervous condition did not constitute a severe impairment. In reaching this conclusion, the ALJ discussed the medical evidence, including the treatment records of Dr. Parker.  According to the ALJ:

> [t]he evidence shows that the claimant received conservative treatment from her primary physician [Dr. Parker] for anxiety and depression.  However, the evidence does not show a 12 continuous month period during which these conditions had more than a minimal effect on the claimant's ability to function.  At most, the treatment included only a mild psychotropic medication regimen.  The claimant's treating physician did not feel that these conditions had such an adverse impact on her ability to function that he recommended she seek professional mental health treatment.  The claimant has not required any mental health treatment or inpatient hospitalizations for depression or anxiety.

Social Security Ruling 96-3p explains that the severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. These basic work factors are inherent in making a determination that an individual does not have a severe mental impairment. <u>The record does not contain evidence from an acceptable source that documents the claimant's inability to perform these basic work activities. Therefore, I find that the claimant does not have a severe mental impairment</u>.

(Tr. 14 (emphasis added)). A review of Dr. Parker's treatment records reflect that Plaintiff began seeing him in July 2002 for physical pain, and on a single occasion in October 2002, Dr. Parker noted "anxiety and/or depression" and prescribed Lumbetrol, as well as other medications for Plaintiff's pain. (<u>Id</u>. at 113-121, 149-153, 156-159, 167-177, 184-191). The doctor's October 2002 entry is conclusory at best, in that it contains no information regarding the symptoms that Plaintiff described or displayed, nor does it provide any information about what led Dr. Parker to reach this conclusion. Notably, as highlighted by the ALJ, Dr. Parker's remaining treatment notes do not reflect that Plaintiff ever received nor was ever referred for any professional mental health treatment. In fact, a searching review of the records do not reveal any instances in which Plaintiff ever complained to Dr. Parker about either anxiety or depression. This is not surprising in light of the fact that during the administrative hearing,

Plaintiff did not provide any testimony regarding problems with depression and/or anxiety.

Additionally, it is also noteworthy that the records of Dr. Kendal I. Foster ("Dr. Foster"), who treated Plaintiff from May 6, 1997 to March 25, 2002, do not reflect <u>any</u> reports or findings regarding anxiety or depression. (Tr. 101-112). Nor are there any findings that Plaintiff's alleged nervous condition places curtailments on any of her daily activities. (<u>Id</u>.) Dr. Foster's March 25, 2002 treatment record reflects that Plaintiff's condition: would not eliminate all likelihood of her ability to ever engage in gainful employment again; has not substantially reduced her ability to work; does not prevent her from caring for her children; and should not prevent her from returning to work in four to eight weeks. (<u>Id</u>. at 101).

Moreover, the record reflects that Plaintiff underwent a consultative psychological evaluation by Patricia G. McCleary, Ph.D. ("Dr. McCleary"), at the request of the Commissioner on November 16, 2002, and that Dr. McCleary's diagnositic impression was <u>"no psychological diagnoses"</u>. (<u>Id</u>. at 123-125 (emphasis added)). During Dr. McCleary's evaluation, Plaintiff reported that: her current medications include Propoxy-N/APAP, Amitrip/CDP, Nabumetone and Corisoporodol; she had a history of anxiety attacks and was hospitalized in 1994/1995 for psychiatric problems, but did not elaborate. (<u>Id</u>. at 123). Dr. McCleary noted that Plaintiff is

11

not receiving any psychological treatment and has received no pain

management training. (Id.) Significantly, upon exam, Dr. McCleary

found the following, regarding Plaintiff:

- she was alert, attentive and cooperative, pleasant and interactive;

- her speech was completely understandable, logical in form, normal in rate and fluency with adequate articulation;

- her affect was stable and mood euthymic as "she is okay most of the time[,]" denied any current suicidal thoughts, sleep is generally okay, has good appetite, wants to be happy;

- her orientation was good (oriented to person, place and time);

- her concentration/attention were within normal limits;

- her recent/remote memory was intact and she could relay past events;

- her fund of information was good;

- her thinking was clear and she had good associations (no indications of thought disorder or confusion);

- she denied hallucinations, there was no evidence of false thinking, she denied suicidal/homicidal ideations and had no obsessions, phobias, somatic concerns or ruminations;

- she exhibited adequate judgment/insight for personal affairs;

- she was able to calculate and read; and

- she functions in the low average range of intellectual functioning.

(Tr. 124-125).  Plaintiff also reported to Dr. McCleary that she

12

spends her days cleaning and caring for her grandbaby and that she is able to do light housekeeping, dishwashing, cooking and drives a car. (Id.) Plaintiff indicated that she does not attend church or belong to any groups or social organizations. (Id.) Dr. McCleary concluded that while Plaintiff reported pain associated with arthritis in her spine, she is "independent in ADLs[]" and she suffers from no psychological impairment (her diagnostic impression was "[n]o psychological diagnosis"). (Id. at 125). Dr. McCleary added that Plaintiff was alert, attentive and cooperative; her motivation was adequate; and that the evaluation had occurred in a quiet office without disruptions so it was a valid and reliable estimate of her current level of functioning. (Id.) Dr. McCleary concluded that Plaintiff has some activities and interests and that she should be able to manage her financial affairs. (Id.) These findings do not support Plaintiff's allegation of severe mental impairment, and instead, provide substantial evidence for the ALJ's conclusion that Plaintiff does not suffer from a severe mental impairment. 20 C.F.R. § 416.927(d).

Further, on December 4, 2002, non-treating, non-examining State Agency physician Dr. Donald E. Hinton ("DDS" or "Dr. Hinton") completed a psychiatric review technique form for Plaintiff, and concluded that evidence of record does <u>not</u> establish that her ailments are severe or that the criteria for the Listings are met. (Tr. 126-140). Dr. Hinton noted that while Dr. Parker found that

13

Plaintiff had anxiety and depression on October 4, 2002, Dr. McCleary subsequently found no psychological diagnosis, and, Plaintiff's ADLs are contrary to Dr. Parker's findings. (Id. at 138). Notably, Dr. Hinton did not find that Plaintiff suffered from a severe mental impairment. (Id. at 126). Opinions of state agency physicians are expert opinions which the ALJ must consider. 20 C.F.R. § 416.927(f)(2); SSR 96-6p. See also e.g., Richardson v. Perales, 402 U.S. 389, 408 (1971); Jones v. Apfel, 2000 WL 548581, *7 (S.D. Ala. Apr. 24, 2000).

Also, Plaintiff was seen on June 17, 2003 by Dr. Joe G. Hardin ("Dr. Hardin"), who conducted a general physical examination of Plaintiff at the request of Dr. Parker. (Tr. 160-165). While Dr. Hardin's examination focused on Plaintiff's physical condition, he noted that "I failed to mention that she was tearful during our encounter, and appeared to be depressed." (Id. at 160, 162-165). According to Dr. Hardin, Plaintiff specifically denied any depression. (Id.) Dr. Hardin further noted that "I think she needs evaluation for antidepressant therapy, but I will leave that up to her primary care physician . . . ." (Id. at 164 (emphasis added)).

As noted supra, Plaintiff's treating physician, Dr. Parker, never referred her for antidepressant therapy, or to any mental health facility or provider for treatment of anxiety and/or depression. While Plaintiff did undergo a consultative

14

psychological examination at the behest of the Commissioner, as noted previously, that doctor, Dr. McCleary, concluded that she was not suffering from a psychological impairment.

Finally, as determined by the ALJ, Plaintiff's credibility regarding her limitations was marginal at best. (Tr. 13). The ALJ cited, as an example, that while Plaintiff reported at one time that she is unable to "do anything, shopping or driving[,]" she simultaneously reported on forms that she shops twice per month and needs assistance with lifting bags or items in the store. (Id.) Likewise, Plaintiff reported that she had no social activities right after she reported that she attends church and visits with friends and family twice per month. (Id.) Similarly, at the administrative hearing, Plaintiff testified that she was unable to do household chores or assist with her grandchild's care; however, she reported to Dr. McCleary that she engages in light housekeeping and cooking as well as helps care for her grandchild. See supra.

Based on the medical evidence and other evidence of record, the undersigned finds that the ALJ did not err in the weight accorded the opinions and findings of Dr. Parker, and that substantial evidence supports the ALJ's conclusion that Plaintiff's anxiety/depression does not raise to the level of a severe impairment. Simply put, Plaintiff failed to establish that her anxiety/depression is more than a slight abnormality that causes more than a minimal effect on her ability to work. See, e.g.,

15

Bridges v. Bowen, 815 F.2d 622, 625-626 (11th Cir. 1987) (per
curiam) (holding that if an impairment causes only mild effects on
a claimant's ability to work, or is amenable to medical treatment,
it may be non-severe).

Turning next to Plaintiff's assertion that the ALJ erred in
rejecting Dr. Parker's opinion that she is unable to work because
of degenerative joint disease of the spine, the undersigned finds
that the ALJ correctly determined that Dr. Parker's opinion was
entitled to little weight, as it was not supported by his treatment
notes or other objective medical evidence.  As noted supra,
Plaintiff first sought treatment from Dr. Parker in July 2002 for
pain in her left side.  (Tr. 113-121, 149-153, 156-159, 167-177,
184-191).  Dr. Parker's assessment at that time was chronic left
flank pain, and he prescribed Lortab 7.5.  (Id. at 118).  Plaintiff
was seen again on August 28, 2002 for complaints of left flank
pain.  (Id. at 118).  Dr. Parker's physical examination of
Plaintiff was within normal limits, and he surmised that Plaintiff
may have renal stones.  (Id.)  She was prescribed more Lortab and
a MRI of the lumbar spine was suggested; however, Dr. Parker's
records do not indicate that such was actually done.  (Id.)

On September 4, 2002, Plaintiff visited Dr. Parker and
requested that he complete a form for the Mobile Department of
Human Resources.  (Id. at 116, 121).  On the form, Dr. Parker
indicated that Plaintiff was incapacitated because of degenerative

joint disease of the spine. (Tr. 121). He also listed the onset date as April 1998,[6] and indicated that Plaintiff was restricted from repetitive movement of her lower extremities, that she could not lift more than five to ten pounds, and that the date of her last examination was September 4, 2002. (Id.) He also opined that Plaintiff's condition substantially reduced her ability to work, and that she was expected to be unable to work full-time for more than six months. (Id.) Notwithstanding the information contained on the form, Dr. Parker's treatment notes for that day do not reflect that Plaintiff was examined that day. (Id. at 116). The notes only reflect Plaintiff's blood pressure, weight, and temperature. (Id.) There are no notations that indicate that Plaintiff was either examined or that she underwent any testing during the September 4th visit. (Id.) In fact, neither the treatment records for September 4th nor the form completed by Dr. Parker reference any objective medical evidence to support the limitations imposed by Dr. Parker.

Plaintiff next visited Dr. Parker on October 4, 2002, when she again complained of pain in her left side and her back. (Tr. 115). Dr. Parker concluded that Plaintiff was suffering from anxiety and depression and prescribed medication; however, as noted supra, it is not clear what symptoms Plaintiff reported or exhibited that led

---

[6]According to Dr. Parker's records, Plaintiff first sought treatment from him in July 2002. See supra.

Dr. Parker to reach this conclusion.  During Plaintiff's November 11, 2002 visit, she complained of muscle spasms in her neck and arm.  (Tr. 177).  Dr. Parker opined that she suffered from chronic pain syndrom, and indicated that he would order X-rays and a MRI; however, there is nothing in the medical records to indicate that this was ever done.  (Id.)

Plaintiff returned to Dr. Parker on January 3, 2003, and Dr. Parker's notes of that visit reflect "chronic pain syndrome" and "probable fibromyalgia."  (Id. at 176).  He also noted that Plaintiff would be referred to a rheumatologist for evaluation of probable fibromyalgia.  (Id.)  During Plaintiff's January 21, 2003 visit, Dr. Parker noted that Plaintiff continues to be "disabled" as well as the need to have her assessed for "probable fibromyalgia."  (Id. at 175).  Treatment notes reflect that Plaintiff was seen by Dr. Parker for follow-up on February 17, 2003.  (Id. at 174).  In one section of these notes, Dr. Parker indicates that Plaintiff had no complaints, while in another section, he indicates that she  complained of pain in her muscles, back and legs.  (Tr. 174).  He listed "chronic pain syndrome" and "diffuse pain."  (Id.)  He also noted that Plaintiff would be referred to a rheumatologist, and that he had completed "Disability papers" for her.  (Id.)

The "Disability papers" referenced in Dr. Parker's treatment notes are actually a physical capacities evaluation and clinical

assessment of pain form that he completed for Plaintiff on February 17, 2003.  (Id. at 149-151).  On the physical capacities form, Dr. Parker opined that Plaintiff was able to sit for one hour at a time for a total of one hour per day in an eight hour workday; only stand or walk for 0 hours at a time for a total of 0 hours during an eight hour workday; occasionally lift and/or carry up to 10 pounds, but never more; and occasionally bend, stoop or reach, but could not squat, crawl, climb, balance or work around unprotected heights, moving machinery, or driving automotive equipment.  (Id. at 149).  He also indicated that Plaintiff should avoid exposure to marked changes in temperature or dust, fumes or gas.  (Id.)

Dr. Parker also completed a pain assessment for Plaintiff in which he found that she has pain to such an extent as to be distracting to adequate performance of daily activities or work, that physical activity will increase her pain to such an extent that bed rest and/or medication would be necessary, and that prescribed medication will totally restrict her.  (Tr. 150-151).  He also opined that she is unable to function at a productive level of work and that pain treatments have had no appreciable affect or have only briefly altered the level of pain she experiences.  (Id.)

Plaintiff was subsequently seen by Dr. Parker for follow-up on April 2, 2003, and at that time, reported no complaints.  (Id. at 173).  The treatment notes list "chronic back pain," and indicate that Plaintiff was prescribed medications.  (Id.)  Plaintiff

returned to see Dr. Parker on April 22, 2003 with complaints of foot pain. (Id. at 172). It was noted that X-rays would be taken of her foot. (Id.) Plaintiff again presented to Dr. Parker on May 6, 2003 with a complaint regarding a cyst in her left breast. (Tr. 170-171). Dr. Parker referred her to Dr. Hardin for a mammography and removal of the cyst. (Id. at 157-158). He also referred her to Dr. McLeod for her foot pain. (Id. at 159). Plaintiff was next seen by Dr. Parker on June 24, 2003, and the notes reflect that she had no complaints at that time and that she had been seen by Dr. Hardin. (Id. at 170). The records reflect further, that Plaintiff visited Dr. Parker's office on June 30, 2003, and July 7, 2003; however, there are no treatment notes which reflect that she was actually seen by Dr. Parker, let alone examined by him on those two occasions. (Id. at 169).

On July 28, 2003, Dr. Parker completed a Time Limit Hardship/Application Job Search Exemption form for Plaintiff. (Id. at 184-185). On the form, he opined that Plaintiff was incapacitated due to fibromyalgia, and that she suffers from anemia. (Tr. 185). Dr. Parker also noted that Plaintiff had been incapacitated due to the condition since January 1999, and further opined that she was not capable of performing any "heavy" lifting or repetitive use of her hands or legs. (Id.)

On September 22, 2003, Dr. Parker completed a physical residual functional capacity form in which he opined that Plaintiff

was able to sit for one hour at a time, for a total of one hour per day in an eight hour workday; stand or walk for 0 hours at a time, for a total of 0 hours during an eight hour workday; occasionally lift and/or carry up to 5 pounds, but never lift and/or carry any weight in excess of 5 pounds, or use her hands or feet to perform repetitive movement; occasionally bend, stoop or reach, but could not squat, crawl, climb or balance or work around unprotected heights, moving machinery, or driving automotive equipment; and that she should avoid exposure to marked changes in temperature or dust, fumes or gas.  (<u>Id</u>. at 187).  Dr. Parker also completed a "Clinical Assessment of Fatigue" form on that date, wherein he opined that fatigue was present at an incapacitating level; that physical activity, such as walking or standing, increased fatigue to such an extent that immediate bed rest was necessary; and that fatigue forced Plaintiff to recline or nap daily for one hour or more at a time.  (<u>Id</u>. at 188-189).  In a Clinical Assessment of Pain form, again completed on that same date, Dr. Parker further opined that Plaintiff experienced virtually incapacitating pain; any physical activity would result in an increase of pain to such an extent bed rest and/or medication was necessary; and that her prescribed medications would render her unable to function at a productive level of work.  (<u>Id</u>. at 190-191).

The record reflects that Plaintiff was examined by Dr. Charles Hall on November 14, 2002.  (<u>Id</u>. at 122).  Upon physical

examination, Plaintiff's cervical range of motion appeared to be within normal limits for flexion, she had extension to 15 degrees with pain, and had pain with palpation over the cervical spine and trapezius muscles.   (Tr. 122).   Lumbar range of motion was 40 degrees flexion and 20 degrees extension, and side bending was to 20 degrees.   (Id.)   There was no edema or erythema of the lower extremities and patella and ankle reflexes were 2+.   (Id.) Straight leg raising was equivocal and manual motor testing was 5/5 strength for EHL's, dorsiflexors and plantar flexors.   (Id.)   There were no upper motor neuron signs and no obvious gait abnormalities. (Id.)   X-rays revealed no degenerative disc disease and normal spinal alignment.   (Id.)   Dr. Hall opined that Plaintiff would have no difficulty with jobs using her upper extremities or lower extremities.   (Tr. 122).   He felt Plaintiff's bending and stooping should be limited to occasional, but imposed no limits on her ability to walk, stand, or sit.   (Id.)

Plaintiff was also evaluated by Dr. William A. Crotwell, III, a Board certified orthopedic specialist, at the request of the Commissioner, on July 14, 2003.   (Id. at 178-180).   Dr. Crotwell found that Plaintiff was able to kick off her shoes without any problem, and flex and bend her leg.   (Id.)   She could toe and heel walk normally.   (Id. at 178-180).   He opined that when asked to flex and extend, Plaintiff exerted a poor effort to about 50%, and noted that he did not see any tenderness over the SI's or back.

(<u>Id</u>.)  He also noted that reflexes were +2 in patella and Achilles;
intrinsics were normal; motor strength 5/5; straight leg raising
was to 90 degrees sitting; and that when lying straight, leg
raising was to 80 degrees on the right and left with increased pain
with plantar flexion and decreased pain with dorsiflexion.  (Tr.
178-180).  According to Dr. Crotwell, this as well as other testing
is "very inconsistent" for any major back problem.  (<u>Id</u>.)  X-rays
of the lumbar spine showed a normal lumbar spine with no major
arthritis and no disc space collapse.  (<u>Id</u>.)  Dr. Crotwell's
diagnosis was lumbar pain with no objective evidence, and he opined
that Plaintiff could carry out medium, light, and sedentary
activity.  (<u>Id</u>.)

    As noted <u>supra</u>, Plaintiff was also examined by Dr. Hardin, a
rheumatologist, at the request of Dr. Parker on June 17, 2003.
(<u>Id</u>. at 163-164).  Dr. Hardin found that Plaintiff had no systemic
symptoms suggestive of any generalized connective tissue disease
and that there had been no rashes, hair loss, oral lesions,
pleurisy, Raynaud's phenomenon, and no joint swelling.  (<u>Id</u>.)  On
general examination, Plaintiff's thyroid appeared to be enlarged,
her chest was clear, and her heart was regular.  (<u>Id</u>.)  There were
no significant joint findings anywhere except for minimal PIP joint
tenderness with no swelling.  (Tr. 163-164).  Dr. Hardin also
determined that Plaintiff was diffusely tender in terms of the
musculoskeletal exam and there did appear to be some localization

to almost all of the fibromyalgia tender points, especially the
presacral area, the trochanters and the medial aspect below the
knee. (<u>Id</u>.) Based on the laboratory results, Dr. Hardin opined
that the thrombocytopenia was significant, that it was not related
to Plaintiff's rheumatic complaints, and that she should be
referred to hematology.[7] (<u>Id</u>. at 163-165).

The ALJ's decision contains a thorough discussion of the
above-referenced medical evidence. Based upon his review of the
evidence, the ALJ gave no weight to the Physical Functional
Evaluations completed by Dr. Parker and dated February 2, 2003 and
September 22, 2003. According to the ALJ, "[n]o weight is given to
Dr. Parker's opinion as expressed in those forms because it is not
supported by objective medical evidence and is merely conclusory."
(Tr. 20). The ALJ further noted that Dr. Parker's opinion was
contradicted by his own office notes. (<u>Id</u>. at 20-21). The ALJ
explained that "[i]t is true that Dr. Parker has consistently
supported the claimant's allegations [regarding her disability];
however, Dr. Parker has had nothing but the claimant's self report
on which to base his support. . . . [and] has provided no
radiological evidence to support his opinion and obviously has not
reviewed the radiological evidence that exists." (<u>Id</u>. at 21).
Additionally, the ALJ noted that Dr. Parker failed to fully

_____

[7]As noted <u>supra</u>, Dr. Hardin also suggested that Plaintiff needed
evaluation for antidepressant therapy because she was tearful and
appeared depressed during the examination. (<u>Id</u>. at 160-165).

complete the forms because he neglected to provide an explanation and briefly describe the degree and basis for any restriction indicated on the forms. (Id.)

Substantial record evidence supports the ALJ's decision in this case. Although Dr. Parker was Plaintiff's treating physician, the ALJ did not err in rejecting his opinion that she was unable to work because of degenerative joint disease of the spine. Dr. Parker's opinion was not supported by any objective medical evidence, or his own treatment notes. Moreover, no other doctor reached the same or similar conclusions as Dr. Parker. In fact, after examining Plaintiff and reviewing X-rays of her lumbar spine, Dr. Crotwell concluded that Plaintiff was capable of carrying out medium, light and sedentary work. See supra. Additionally, while Plaintiff points to Dr. Hardin's diagnosis of "probable fibromyalgia," it is significant that Dr. Hardin did not impose any restrictions on Plaintiff's ability to work, or otherwise suggest that she was unable to work. Id. Accordingly, the undersigned concludes that substantial record evidence supports the ALJ's decision; thus, the decision should be **AFFIRMED.**

**V.   Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim, be **AFFIRMED.**

The attached sheet contains important information regarding objections to this report and recommendation.

**DONE** this **1st** day of **February, 2006.**

                                    /s/ Sonja F. Bivins
                              **UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)©); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

          <u>    /s/ SONJA F. BIVINS    </u>
          **UNITED STATES MAGISTRATE JUDGE**